# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
|     Plaintiff | ) | Hon. Dennis M. Cavanaugh, |
| | ) | U.S.D.J. |
|     v. | ) | |
| | ) | Civil Action No. 13-4108 |
| $776,670.00 PREVIOUSLY | ) | |
| CONTAINED IN BANK OF | ) | **Motion Return Date:** |
| AMERICAN ACCOUNT NUMBER | ) | **October 21, 2013** |
| XXXXXXXX3507 HELD IN THE | ) | |
| NAME OF SHIN'S TRADING, DBA | ) | |
| CALA PRODUCTS | ) | |
| | ) | |
|     Defendant *In Rem* | ) | |

---

## REPLY TO PLAINTIFF'S OPPOSITION TO MOTION

---

Steven Brill, Esq.
SULLIVAN BRILL, LLP
115 Broadway 17th Floor
New York, NY  10006
212-566-1000
Steven.brill@sullivanbrill.com
Attorney for Claimants

On the brief:
    James Healy, Esq.
    Sullivan Brill, LLP

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTORY STATEMENT .................................................................. 1

I.   THE GOVERNMENT HAS CONFLATED AND MISCONTRUED THE
     LEGAL STANDARDS REQUIRED IN PLEADING A CIVIL FORITURE
     COMPLAINT.  ............................................................................. 1

A.  *Sufficiency of pleading requires looking at both the FRCP and the
     Supplemental Rules* ................................................................. 1

B.  *CAFRA has raised the burden of proof required to survive a motion to
     dismiss along with the proof at trial.* ............................................. 5

II.  APPLYING THE CORRECT STANDARD THE GOVERNMENT HAS
     NOT MET ITS BURDEN WITH RESPECT TO THE ALLEGED CRIMES. ........ 8

A.  *Structuring under 31 U.S.C. § 5324 has not been sufficiently pled* ............. 9

B.  *Narcotics and Money Laundering charges have not been sufficiently pled.* ............. 12

III. THE GOVERNMENT'S INVOKING OF THE INNOCENT OWNER  DEFENSE
     ONLY HIGHLIGHTS THE CLAIMANT'S ENTITLEMENT TO THE
     DISMISSAL OF THE COMPLAINT ....................................................... 13

IV. THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ................. 14

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................. 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................. 2,3

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ................................... 3

*Kreimer v. City of Newark*, 2011 WL 1322265 (D.N.J., 2011) ........................... 4

*Ratzlaf v. United States*, 510 U.S. 135 (1994)...................................................... 9

*United States v. $263,327.95*, 2013 WL 1285407 (D.N.J., 2013) ...................... 10

*United States v. $39,557, more or less, in U.S. Currency*,
2008 WL 2901318 (D.N.J., 2008)........................................................................... 2

*United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141 (3d Cir. 2003) ............. 2

*United States v. $50,040 in U.S. Currency*, 2007 WL 1176631 (N.D. Cal., 2007) ......... 2

*United States v. $4096.00 in U.S. Currency, More or Less*,
2005 WL 1127138 (M.D. Ga., 2005) ...................................................................... 2

*United States v. $22,173.00 in U.S. Currency*,
716 F. Supp. 2d 245  (S.D.N.Y. 2010) ................................................................... 3,6

*U.S. v.40,000.00 in U.S. Currency*,
2010 WL 2330353 (W.D.N.C., 2010) *report and recommendation adopted sub*
*nom. United States v. $40,000.00 in U.S. Currency,* 2010 WL 2330352
(W.D.N.C., 2010)....................................................................................................... 3

*United States v. $59,074.00 in U.S. Currency,* 959 F. Supp. 243 (D.N.J. 1997)............. 6

*United States v. $1,399,313.74 in U.S. Currency*,
 591 F. Supp. 2d 365 (S.D.N.Y. 2008) ................................................................... 3,13

*United States v. $734,578.82 in U.S. Currency*, 286 F.3d 641 (3d Cir. 2002) ................ 8

*United States v. $263,327.95*, 2013 WL 1285407 (D.N.J., 2013) .................................... 1

*United States v. $111,937.54 Seized from First Metro Bank Account No. X-3436,*
2013 WL 1498916 (N.D. Ala., 2013) ................................................................. 4

*United States v. $255,427.15 in U.S. Currency,*
841 F. Supp. 2d 1343 (S.D. Ga. 2012) ................................................... 4

*United States v. $19,054.00 in U.S. Funds,* 2012 WL 4094361 (M.D. Ga., 2012).......... 7

*United States v. A Certain Parcel of Land, Moultonboro,*
781 F. Supp. 830 (D.N.H. 1992) ......................................................... 10

*United States v. All Right*, 392 F. App'x 85 (3d Cir. 2010)................................. 6

*United States v. Cherry*, 330 F.3d 658 (4th Cir. 2003) ..................................... 8

*United States v. Daccarett*, 6 F.3d 37 (2d Cir. 1993) ......................................... 6

*United States v. Funds in Amount of $101,999.78,*
2008 WL 4222248 (N.D. Ill, 2008) ...................................................... 10

*United States v. Sandini*, 816 F.2d 869 (3d Cir. 1987)...................................... 8

*U.S. v. Taveras*, 2006 WL 1875339 (E.D.N.Y., 2006) ..................................... 12

**Statutes**

18 U.S.C. § 983(c)(1) ................................................................................. 5

31 U.S.C. § 5324.......................................................................................... 9

**Rules**

Supplemental Rule G.................................................................................. 4

**Articles**

Sarah Stillman, *Taken* NEW YORKER MAGAZINE (Aug. 12, 2013),
http://www.newyorker.com/reporting/2013/08/12/130812fa_fact_stillman .................. 15

Larry Salzman, *Assault by civil forfeiture: Column*, USA TODAY (September 25,
2013), http://www.usatoday.com/story/opinion/2013/09/25/grocery-store-detroit-
irs-column/2868797/.............................................................................................. 15

Chip Mellor, *Civil Forfeiture Laws And The Continued Assault On Private
Property*, FORBES (June 8, 2011), http://www.forbes.com/2011/06/08/property-
civil-forfeiture.html.............................................................................................. 15

## INTRODUCTORY STATEMENT

If the reasoning in the Government's Opposition Brief were to be accepted, any time a magistrate issued a seizure warrant in a civil forfeiture action the plaintiff's burden of proof would be met.  Similarly, a series of deposits under ten thousand dollars ($10,000.00) made under any circumstances – including legal ones - would suffice to show knowledge of, and intent to evade, the reporting requirement, the *mens rea* element, of 31 U.S.C. § 5324. Motions to dismiss would become extinct. Fortunately the law does not support this faulty *a fortiari* argument, and, therefore, this Court should not either.  For the reasons discussed below, in fact, the Government, in its opposition has created a stronger case for granting Claimant's motion and dismissing the underlying complaint with prejudice.

## I. THE GOVERNMENT HAS CONFLATED AND MISCONTRUED THE LEGAL STANDARDS REQUIRED IN PLEADING A CIVIL FORITURE COMPLAINT.

In its opposition brief, the Government imprudently combines two separate and critical legal standards at issue in this case: (1) the sufficiency of pleading; and (2) the burden of proof.

### A. *Sufficiency of pleading requires looking at both the FRCP and the Supplemental Rules*

The sufficiency of a complaint in a civil forfeiture action is governed by two distinct, though complimentary standards: Federal Rules of Civil Procedure Rule 12(b)(6) and Supplementary Rules E and G. *United States v. $263,327.95*, 2013 WL

1

1285407 (D.N.J., 2013) ("Civil asset forfeiture proceedings are governed by two sets of procedural rules: the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions."); *United States v. $39,557, more or less, in U.S. Currency*, 2008 WL 2901318 (D.N.J., 2008) (noting the same).

The Government's opposition focuses only the pleading requirements enumerated in the Supplemental Rules.  As seeming justification for this position it cites to *United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141 (3d Cir. 2003). The Court in *$8,221,877.16*, however, was considering a case in which the pleading requirement between the FRCP and the Supplemental rules were clearly at odds. *See Id*. at 150 (noting that FRCP 12(b)(6) "procedure for motions in lieu of an answer was inconsistent with Supplemental Rule C(6)'s pleadings procedure" requiring, exclusively, an answer).

Further exacerbating the confusion in its opposition, is the Government's cursory and curious citing to cases that articulate the "no set of facts" pleading standard from *Conley*. (Gov. Opposition 1 (citing   *United States v. $50,040 in U.S. Currency*, 2007 WL 1176631 (N.D. Cal., 2007) and *United States v. $4096.00 in U.S. Currency, More or Less*, 2005 WL 1127138 (M.D. Ga., 2005)).[1]  Of course, *Conely* has not been the standard since 2007, when *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) increased

---

[1] It should also be pointed out that *United States v. $4096.00 in U.S. Currency, More or Less* was decided prior to the amendment passed in December of 2006 that added Supplemental Rule G, which states the current pleading standard under the Supplemental Rules.

the pleading standard required to survive a motion to dismiss under FRCP 12(b)(6).

*Twombly* and its progeny state, in short, that the pleading requires "a plaintiff to plead more than the possibility of relief to survive a motion to dismiss," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and that "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions. *Twombly,* 550 U.S. at 545 (internal quotation marks omitted).

Courts in civil forfeiture actions have held that the *Twombly* strictures are not at issue with the Supplemental Rules, and therefore are instructive when considering a motion to dismiss. *See United States v. $22,173.00 in U.S. Currency*, 716 F. Supp. 2d 245, 249 (S.D.N.Y. 2010) (holding "the [*Twombly* and *Iqbal*] decisions and their progeny do not conflict with the Supplemental Rules, they may help to clarify when a civil forfeiture complaint survives the motion to dismiss phase"); *U.S. v.40,000.00 in U.S. Currency*, 2010 WL 2330353 (W.D.N.C., 2010*) report and recommendation adopted sub nom. United States v. $40,000.00 in U.S. Currency,* 2010 WL 2330352 (W.D.N.C., 2010) (holding same); *United States v. $1,399,313.74 in U.S. Currency*, 591 F. Supp. 2d 365, 370 (S.D.N.Y. 2008) (consider both  standards in determining motion to dismiss).

In addition to Rule 12(b)(6) the Government is required to comply with the pleading standards contained in the Supplemental Rules.  The **<u>current</u>** relevant

Supplemental Rules are contained in Rule E(2)(a) and G(2).[2] Rule G states that the complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."

Thus, combining the two standards, the Government must plead facts that meet the current *Twombly* standards in order to **then** be considered in meeting the requirements under the Supplemental Rules. *See United States v. $111,937.54 Seized from First Metro Bank Account No. X-3436,* 2013 WL 1498916 (N.D. Ala., 2013) (holding that a court does not consider all facts in the complaint as true, but only "well-pled facts"); *United States v. $255,427.15 in U.S. Currency,* 841 F. Supp. 2d 1343, 1346 (S.D. Ga. 2012) ("The court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts."); *Kreimer v. City of Newark,* 2011 WL 1322265 (D.N.J., 2011) (holding same).

It its opposition, the Government asserts that in a civil complaint all "factual allegations . . . are deemed true[.]" (Gov. Opposition 1), but this a misstatement of the law.  The correct standard is, all **well-pled** facts are deemed true.  Well-pled is assessed under the *Twombly* standard, which requires more than labels or conclusions and "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556

---

[2] In 2006, the Supplemental Rules were amended adding Rule G.  Any case prior to this amendment was based on the common law interpretation of Rule E and the *Conely* 12(b)(6) standard and this is, at best, confusing as a comprehensive accurate statement of the standard.  The Government relies on no fewer than seven cases decided prior to 2006 in making its argument regarding the applicable legal standard, many of them citing the language of *Conely* or just Rule E(2)(a).

4

U.S. 662, 678 (2009). As indicated in the original moving papers, the vast majority of the "facts" contained in the complaint are little more than conclusions and possibilities. Global statements regarding the general criminal nature of **entire** countries (*See* Complaint ¶ 26), or the "popular" practices of unnamed and unknown narcotics traffickers (Complaint ¶ 9), are exactly the type of "non-facts" that the *Twombly-Iqbal* standard rejects.

**B.  CAFRA has raised the burden of proof required to survive a motion to dismiss along with the proof at trial.**

The passage of the Civil Asset Forfeiture Reform Act ("CAFRA") shifted the established burden of proof: First, the Government must establish in it its complaint that there is a reasonable belief that it can prove by a preponderance of the evidence that "the property is subject to forfeiture" 18 U.S.C. § 983(c)(1); Second, that if it is alleged that  "the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." *Id.* § 983(c)(3); and third the burden never shifts to the claimant as it did prior to CAFRA.

The Government in its opposition asserts that the standard has shifted from a probable cause standard to one of reasonable belief. (Gov. Opposition 2). This either misunderstands or misstates the accurate standard.  In both pre and post CAFRA proceedings the Government's burden was to establish a **reasonable belief** that it could

5

meet its burden at trial.  The difference is that the burden at trial shifted from one of probable cause (with a burden shift to the claimant) to one of preponderance of the evidence. *Compare United States v. $59,074.00 in U.S. Currency,* 959 F. Supp. 243, 249 (D.N.J. 1997) (applying pre-CAFRA standard) *with United States v. $22,173.00 in U.S. Currency,* 716 F. Supp. 2d at 248. (applying post CAFRA standard). It may be that the Government is equating the criminal distinction between reasonable **suspicion** and probable cause in averring that standard has lessened. Clearly, the standard has not.

Demonstrating this confusion, the Government argues that the fact that it obtained a seizure warrant based on probable cause is an indication that it has already exceeded a "reasonable belief" standard. (Gov. Opposition 4).[3] Of course, probable cause for a warrant is an *ex parte* application which determines if there is a "reasonable ground for the belief of guilt supported by less than prima facie proof but more than mere suspicion." *United States v. All Right*, 392 F. App'x 85, 90 (3d Cir. 2010). It is well known that this is a lenient standard where the Government has a result-oriented incentive to pick and choose which facts to disclose, and "it is not surprising that courts

_____

[3] Part of the confusion is created by pre-CAFRA courts combining the required burden to seize property with the required burden to sustain a complaint, particularly because once the plaintiff had made *prima facie* showing of a reasonable belief that it could prove probable cause, the burned shifted to the claimant.  The language of pre-CAFRA courts often simple states that once "the government has established probable cause" the claimant must show a lack of probable cause. *See e.g.*,*United States v. Daccarett*, 6 F.3d 37, 57 (2d Cir. 1993). Given this burden shifting it is understandable that in the pre-CAFRA period the most common response to a civil seizure was a motion for summary judgment not a motion to dismiss.

permit[] the Government to rely on a broad range of range of evidence to establish probable cause, much of which would be inadmissible under the Federal Rules of Evidence." *United States v. $19,054.00 in U.S. Funds,* 2012 WL 4094361 (M.D. Ga., 2012). Therefore, the Government's ability to obtain a seizure warrant does not meet, much less exceed, the standards of pleading required.[4]

Combining the 12(b)(6) requirements with the CAFRA standards creates a simple, three-step process to determine if a complaint in a civil forfeiture can withstand a motion to dismiss:

1)  A court must examine the factual allegation under the *Twombly-Iqbal* standard for pleading. Any factual allegations that meet that standard are deemed to be true and those that do not are disregarded as speculations or conclusions;

2)  Using only well-pled facts, not conclusions or speculations,  a court must determine if the requirement of the Supplementary Rules are met, that is, whether the Government stated sufficiently detailed facts

3)  to support a reasonable belief that the Government will be able prove each and every element of the criminal activity by a preponderance of the evidence at trial.

_____

[4] To hold otherwise would create the presumption that **whenever** the Government obtains a seizure warrant, which it must do in a civil forfeiture action, it has already met the pleading standard necessary to defeat a motion to dismiss.

## II. APPLYING THE CORRECT STANDARD THE GOVERNMENT HAS NOT MET ITS BURDEN WITH RESPECT TO THE ALLEGED CRIMES.

In its opposition, the Government supports its complaint with respect to illegal structuring, money laundering and narcotics offenses.  Its arguments, however, do not overcome the insufficiency of that complaint.

As a preliminary matter, in its opposition the Government states that as the defendant is the property *in rem* not the claimant, the claimant's illegal actions, or lack thereof, are not relevant. In support of this contention, it cites to *United States v. Sandini*, 816 F.2d 869 (3d Cir. 1987).  However, *Sandini* is of little value in this case. It was a pre-CAFRA, pre-Rule G case in which the Third Circuit was determining the validity of a criminal forfeiture action, and, in dicta, commented on its then understanding of civil forfeiture. *Id.* at 872.[5] Without belaboring the point, it is common sense that if the Government must prove all the elements of a criminal activity to succeed at trial, the complaint must allege some sort of activity and intent by an actor. The complaint, cited in the opposition, does just this, laying out alleged facts regarding the Shins (Gov. Opposition 6-7).  It is completely puzzling how the Government can rely on alleged facts regarding the supposed acts of the claimants, and then, when

---

[5] The other two cases the Government cites to support this point are also inapplicable. *United States v. Cherry*, 330 F.3d 658, 669 (4th Cir. 2003) is also criminal forfeiture case which merely cites *Sandini* in a footnote, and *United States v. $734,578.82 in U.S. Currency*, 286 F.3d 641, 657 (3d Cir. 2002), again citing *Sandini,* was superseded by the CAFRA statute and is no longer good law.

challenged as to the sufficiency of those allegations, argue that those very allegations are irrelevant.

### A. Structuring under 31 U.S.C. § 5324 has not been sufficiently pled.

Under the three-part sufficiency requirements of § 12(b)(6), the Supplemental Rules and CAFRA, for the Government to successfully plead that the funds were subject to forfeiture in conjunction with a violation of the structuring statute they would have to have well-pleaded facts that gave the Court reasonable belief that all the elements could be met at trial by a preponderance of the evidence. The three elements are: 1) the structuring of the transactions; 2) "*knowledge* of a financial institution's reporting requirements, and [3]] the structuring of a transaction for the *purpose* of evading those requirements." *Ratzlaf v. United States*, 510 U.S. 135, 152 (1994) (emphasis in original); 31 U.S.C. § 5324. In its opposition, the Government points to certain "facts" to support such a reasonable belief, such as a statement of the obligation of the bank to make reports of transactions over $10,000. (Gov. Opposition 5); that "many individuals" make multiple deposits in amounts and ways so to avoid the reporting requirement (*Id.*); The list of deposits under $10,000, including the dates and locations, made at various banks throughout the country made to the Shins' Trading account. (*Id.*); the description of a money laundering system called the Black Market Peso Exchange ("BMPE") (*Id.* 6) and the fact the "the funds were derived from the sale of narcotics provides a strong incentive for an intent to avoid the filing of a CTR." (*Id.*).

It is patently obvious that most, if not all, of these "allegations" do not pass *Twombly* muster. The bank's statutory obligation is a statement of law and not fact. The statement as to what many individuals might or might not do is a speculative conclusion. So, too, is the story of the BMPE. The idea that the funds were "derived from the sale of narcotics" is completely without any basis or substantial connection found in the complaint and, as a "believe it because we say it is true" statement, it should be disregarded as violative of the 12(b)(6) requirements.

This leaves the list of the transactions with their dates. Although this may meet the 12(b)(6) requirement of being well-pled, it still must meet the Supplemental Rules and CAFRA requirements. No doubt the Government would argue that these "facts" are sufficiently detailed to meet the Rule G standard. The question becomes, does the list of transactions, standing alone, indicate a reasonable belief that the Government can meet its burden at trial? The answer is resoundingly no.

The Government argues that this listing of deposits successfully alleges not only the *actus reus* element of structuring, but the dual *mens rea* elements as well. To support this argument, it cites to *United States v. $263,327.95*, 2013 WL 1285407 (D.N.J., 2013) and *United States v. Funds in Amount of $101,999.78*, 2008 WL 4222248 (N.D. Ill, 2008).[6] However, these cases are distinguishable. In both cases, the

---

[6] The Government also cites to *United States v. A Certain Parcel of Land, Moultonboro*, 781 F. Supp. 830, 833 (D.N.H. 1992), however as the court in this case was assessing the alleged pattern of deposits to determine if the pleading was

**claimant** was making the deposits himself, and, considering that fact, the court felt that it was reasonable to infer that the **claimant** knew of the reporting requirements and was acting with intent to evade them.[7] In this case, the Government's own complaint and opposition support the fact that the Shins did not make **any** of the deposits themselves. (Gov. Opposition 5). Therefore, unlike the claimant in *United States v. $263,327.95,* the only way the Shins intent and knowledge could be inferred would be if they directed the individuals making the deposits to structure the transactions. As the complaint is written, it is not possible for the Government to allege or prove this at trial.

The workings of the BMPE are described in intricate detail. The heart of that description is that the individuals making the actual cash deposits are unknown to the businessmen on either end of the legitimate transactions and, if the complaint is an indication, also unknown to the Government.  The "broker" who directs the unknown individuals making the deposits,[8] is also unknown to the U.S. business-person, in this case the Shins. The South and Latin American companies that may have been

the sufficient to meet the pre-CAFRA probable cause burden it is not applicable here.

[7] In *United States v. Funds in Amount of $101,999.78*, the claimant not only made the deposits himself but also transferred amounts greater than $10,000 to an investment account in his name.

[8] The "known" broker mentioned in the complaint (Complaint ¶ 19), as thoroughly explained in the moving papers, does not serve to provide any reasonable belief of any element of any crime; given that he has been deported and is beyond the subpoena power of the Court the Government cannot, and has not, asserted that he can assist in proving any element at trial. Further, by wait two years to bring this action from the time it had this individual in custody, the Government has extremely prejudiced the claimants ability to challenge the seizure of their funds.

11

approached by the broker have not been named and are citizens of a foreign country. This places them beyond the subpoena power of the Court. *See e.g.*, *U.S. v. Taveras*, 2006 WL 1875339 (E.D.N.Y., 2006). In short, the Shins did not make the deposits and the Government has no way to show they directed the individuals that did. As a result there can be no inference of knowledge or intent reasonably imputed onto the Shins from the allegation in the complaint.

### B.  Narcotics and Money Laundering charges have not been sufficiently pled.

The Government's opposition does little to rebut the arguments set fort in the moving papers. It reiterates some of the "allegations" from the complaint, but when applying the correct legal standard as outlined above it is obvious that most of the allegations do not survive the *Twombly* test.  What few that might be considered as well-pled do not show a substantial connection to the specifically alleged illegal activity and give no indication that any such illegal activities could be proved at trial.

### III.   THE GOVERNMENT'S INVOKING OF THE INNOCENT OWNER DEFENSE ONLY HIGHLIGHTS THE CLAIMANT'S ENTITLEMENT TO THE DISMISSAL OF THE COMPLAINT

In its opposition, the Government discusses the innocent owner affirmative defense.  The opposition contends that, in pointing out the inability of the Government meeting its burden at trial, the moving paper are asserting a misplaced innocent owner defense. Apart from being a mischaracterization of claimants' argument, in bringing this to the fore, the Government underscores the critical flaw in its complaint.  As set

out above, the only way for the Government to avoid dismissal and support a reasonable belief that it can prove the elements of the structuring claim at trial as alleged, would require something more than a list of deposits to show knowledge and intent.  The Government would have to have available either the individuals who made the deposits, who brokered the exchange and/or the foreign businesses that were purchasing the dollars for pesos, on the theory that they would be able to indicate that the Shins knew of the reporting requirements and that they instructed the individuals making the deposits to structure them to avoid those requirements.

However, as the complaint sets out, such an indication would be contrary to the "factual allegations" as to the way that the BMPE operates.[9]  If, on the other hand, those individuals supported **<u>exactly</u>** the scenario as laid out in the complaint, the Shins would have an unshakeable innocent owner defense:  The individuals making the deposits would confirm that they received instructions only from the broker, not the Shins.  The broker would indicate that he approached the foreign business offering a beneficial exchange rate to pay an existing debt in the United States and never discussed this with the Shins.  The foreign business would state that it negotiated a deal with Shins to pay

---

[9] In *United States v. $1,399,313.74 in U.S. Currency*, the court pointed out speculative nature of just such "allegations. *$1,399,313.74,* 591 F. Supp. 2d (dismissing the complaint because, *inter alia*,  "the Government attempts to shroud the absence of facts supporting an inference that the Defendant Funds are subject to forfeiture on this ground by reciting general facts about the [Black Market Peso Exchange] process").

its existing accounts payable through cash payments deposited directly into the Shins bank account. Upon receipt of the funds, the Shins would ship the merchandise to the business.

## IV.   <u>THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE</u>

Simply put, the Government has presented this Court with a list of bank deposits under $10,000.00 and argues that this single fact is sufficient to require the claimants to forfeit their legal and rightfully derived property.  It is not clear if the Government hopes that the expenditure of legal fees and/or the lack of access to their working capital will weaken the resolve of the Shins and compel them to settle a case that should never have been brought, but it is clear that the complaint is deeply deficient.  To be sure, in its opposition, the Government does not imply that it can amend the complaint to include addition well-pled facts, and it is also clear that any "remedy" would either be in conflict with the allegations in the complaint or make the success of an innocent owner defense a virtual certainty.

Much of this case is disturbing, from its thinly veiled racial/ethnic stereo-types, to its forum shopping to avoid a higher pleading standard and force the Shins to travel 3000 miles to defend the case, to the fact that the Government waited two years to bring claim-- conveniently after the broker, who might very well have supported the Shins' version of the events, was deported and so unavailable to depose. As more and more

14

journalists have documented, civil forfeiture has become big business for all levels of law enforcement. [10]

While these realities should not implicate the Court's legal analysis, discussed above, as to whether or not the complaint should be dismissed, they do inform as to whether or not the Government should be allowed to continue to hold claimants' funds hostage while it makes an ill-fated attempt to amend a the complaint. In this case, it is not a close call; the Government has over-reached and the complaint should be dismissed with prejudice.

Dated: October 14, 2013

Respectfully submitted,


___/s/_____

By: Steven Brill, Esq.
Attorney for Claimants

---

[10] *See* Sarah Stillman, *Taken* NEW YORKER MAGAZINE (Aug. 12, 2013), http://www.newyorker.com/reporting/2013/08/12/130812fa_fact_stillman; Larry Salzman, *Assault by civil forfeiture: Column*, USA TODAY (September 25, 2013), http://www.usatoday.com/story/opinion/2013/09/25/grocery-store-detroit-irs-column/2868797/; Chip Mellor, *Civil Forfeiture Laws And The Continued Assault On Private Property*, FORBES (June 8, 2011), http://www.forbes.com/2011/06/08/property-civil-forfeiture.html.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
|     Plaintiff | ) | Hon. Dennis M. Cavanaugh, |
| | ) | U.S.D.J. |
|     v. | ) | |
| | ) | Civil Action No. 13-4108 |
| $776,670.00 PREVIOUSLY | ) | |
| CONTAINED IN BANK OF | ) | |
| AMERICAN ACCOUNT NUMBER | ) | **CERTIFICATE OF** |
| XXXXXXXX3507 HELD IN THE | ) | **SERVICE** |
| NAME OF SHIN'S TRADING, DBA | ) | |
| CALA PRODUCTS | ) | |
| | ) | |
|     Defendant *In Rem* | ) | |

The undersigned counsel hereby certifies that on October 14, 2013 the foregoing document was filed using the Court's CM/EFC system, which will automatically send an email notification to all attorneys of record.

The undersigned counsel further stipulates that he has this day served a copy of this document via United States mail, postage prepaid to

Evan S. Weitz, Esq.
Assistant United States Attorney
United States Attorney's Office for the District of New Jersey
970 Broad St. Suite 700
Newark, N.J. 07102

_____/s/_____
James Healy, Esq.
Sullivan Brill, LLP
115 Broadway    17th Floor
New York,  NY  10006