UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiffs,<br><br>   v.<br><br>$776,670.00 PREVIOUSLY CONTAINED IN BANK OF AMERICA ACCOUNT NUMBER 000376803507 HELD IN THE NAME OF SHIN'S TRADING, DBA CALA PRODUCTS,<br><br>       Defendant *in rem*. | Civ. No. 2:13-4108 (WJM)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

In this *in rem* civil forfeiture proceeding, the Government seized roughly $750,000.00 from a bank account held in the name of Shin's Trading DBA Cala Products ("Shin's"). Claimants Jung Min Shin and Heebok Shin now move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and Supplemental Rule for Admiralty and Maritime Claims and Assets Forfeiture Actions G(8)(b)(i) for failure to state a claim upon which relief can be granted. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the motion to dismiss is **DENIED**.

**I.    BACKGROUND**

The verified complaint *in rem* sets forth the following allegations, which the Court must accept as true for purposes of the instant motion to dismiss. Shin's is a purported jewelry wholesaler and exporter located in Los Angeles, California. Compl. ¶ 18, ECF No. 1. Shin's exports goods to countries including Mexico, Paraguay, Ecaudor, Venezuela, Suriname, Costa Rica, El Salvador, Panama, Colombia, Curacao, and Honduras. *Id.* ¶ 26. The Complaint alleges that "[m]any of these countries are routinely

1

involved in the production or transportation of narcotics or narcotics proceeds." *Id.* The Complaint also alleges that drug traffickers in Colombia and other South American countries sometimes attempt to launder money with the help of South American importers using something called the "Black Market Peso Exchange" ("BMPE"). *Id.* ¶ 10. The BMPE begins with a South American importer who places an order with an American exporter. To make payment, the importer needs to convert its pesos into dollars. To do that, the importer hires a BMPE broker. The BMPE broker trades pesos for dollars that were acquired through illegal drug sales. *Id.* The physical trades take place between people who do not know each other and probably will never meet again. *Id.* ¶ 11. After the pesos are exchanged, the BMPE broker arranges to make payment in dollars to the exporter on behalf of the importer. *Id.* ¶ 12. Frequently, the payments are made at various geographical locations, not necessarily where the exporter is located. *Id.* The Government alleges that payments made to Shin's were part of the BMPE.

The specific funds at issue in this case are funds that were deposited into an account Shin's maintained at Bank of America, account number 000376803507 (the "Account"). The Account was listed in the ledgers of Jose Narvaez, a man who pled guilty to money laundering on March 6, 2012. *Id.* ¶ 19. From March 7, 2012—the day after Narvaez pled guilty—through March 19, 2013, a number of cash deposits were made to the Account at various branches located throughout the country, including one branch located in this District. *Id.* ¶ 20. On multiple occasions, deposits were made on the same or consecutive days totaling $10,000 or more. *Id.* ¶ 21. Representative deposits include:

| **Date** | **Amount** | **Branch** | **Location** |
|---|---|---|---|
| 3/16/2012 | $8,000.00 | Buckhead Crossing | Atlanta, GA |
| 3/16/2012 | $8,500.00 | Howell Ferry | Duluth, GA |
| 3/16/2012 | $8,500.00 | Sugarloaf Financial Center | Lawrenceville, GA |
| | | | |
| 4/18/2012 | $8,000.00 | Hyde Park | Chicago, IL |
| 4/18/2012 | $5,000.00 | Pilsen-18th & Paulina | Chicago, IL |
| 4/18/2012 | $7,000.00 | Back of the Yards | Chicago, IL |
| 4/18/2012 | $5,000.00 | 71st & Stony | Chicago, IL |
| | | | |
| 8/20/2012 | $9,000.00 | Rea Village | Charlotte, NC |
| 8/20/2012 | $8,000.00 | New Town Market | Waxhaw, NC |
| 8/20/2012 | $3,000.00 | Blakeney Crossing | Charlotte, NC |
| | | | |
| 11/15/2012 | $9,700.00 | River Oaks | Calumet City, IL |
| 11/15/2012 | $9,700.00 | Chicago-24th & Cicero | Cicero, IL |

| 11/15/2012 | $9,700.00 | Chicago-24th & Cicero | Cicero, IL |
| --- | --- | --- | --- |
| 11/15/2012 | $9,700.00 | Cicero/Cermak | Cicero, IL |
| 11/15/2012 | $9,700.00 | Cicero/Cermak | Cicero, IL |
| 11/15/2012 | $9,700.00 | Berwyn | Berwyn, IL |
| 11/15/2012 | $9,700.00 | 93rd & Commercial | Chicago, IL |
| 11/15/2012 | $9,700.00 | Chicago-24th & Cicero | Cicero, IL |
| 11/16/2012 | $9,700.00 | Cicero/Cermak | Cicero, IL |
| 11/16/2012 | $9,700.00 | Berwyn | Berwyn, IL |
| | | | |
| 3/6/2013 | $5,000.00 | Laredo | Laredo, TX |
| 3/7/2013 | $5,185.00 | Laredo | Laredo, TX |

*Id.* Furthermore, on November 15 and 16, 2012, 10 deposits totaling $97,000.00 were made to the Account at branches in the Chicago area. *Id.* ¶ 22. (Indeed, according to a Shin's sale associate, many of Shin's invoices were in the amount of $100,000.00. *Id.* ¶ 32.) Based on the handwriting on deposit slips used for the Account, the deposits were made by more than one person. *Id.* ¶ 25. Additionally, though the deposits were made outside of California, there are "no indications" that Shin's Trading maintains any place of business or agent outside of the Los Angeles area. *Id.* ¶ 23.

While the single-day and consecutive-day deposits identified by the Government aggregated to amounts in in excess of $10,000.00 from March 7, 2012 through March 19, 2013, only one individual deposit exceeded $10,000.00. *Id.* ¶ 20 n.1. The Government makes special note of this point because federal law requires (a) that financial institutions file Currency Transaction Reports ("CTRs") with the Government for cash transactions exceeding $10,000.00, and (b) that businesses that receive more than $10,000.00 in related cash transactions file a "form 8300" with the Financial Crimes Enforcement Network ("FinCen"). *Id.* ¶¶ 15, 17 (citing 31 U.S.C. §§ 5313, 5331). Shin's Trading never filed a form 8300 with FinCen. Compl. ¶ 24.

On July 3, 2013, the Government filed the instant verified Complaint for forfeiture *in rem*. ECF No. 1. The Complaint alleges that $776,670.00 contained in the Account was subject to forfeiture for three reasons. First, the Government claims that the money in the Account was subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) as property that involved a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 (money laundering) or 1957 (transacting in property derived from specified unlawful activity). Second, the Government claims that the money in the account was subject to forfeiture under 21 U.S.C. § 881 as property traceable to the sale of a controlled substance. Third, the Government claims that the money in the account was subject to forfeiture under 31

3

U.S.C. § 5317(c) as property involved in a violation of 31 U.S.C. § 5324 (structuring transactions to evade reporting requirement).

On July 3, 2013, the day the Complaint was filed, a seizure warrant was issued for $776,670.00 contained in the Account (the "Property"). *Id.* ¶ 27. On April 24, 2013, the Drug Enforcement Administration ("DEA") executed that warrant and seized the $776,670.00. *Id.* ¶ 28. On April 29, 2013, law enforcement officers interviewed Shin's owners Jung Min Shin and Jenny Shin. *Id.* ¶ 29. Jenny Shin informed the officers that Shin's Mexican and South American customers "prefer" to pay using third party cash deposits made in the United States. *Id.* Jenny Shin also said that she did not know the identities of the people who deposited money into the Account, and she also did not know where the deposits were made. *Id.* ¶ 30. Both Jung Min Shin and Jenny Shin claimed to be unaware of the reporting requirement associated with form 8300. *Id.* ¶ 33.

On August 26, 2013, Jung Min Shin and Heebok Shin (apparently this is the Jenny Shin interviewed by law enforcement) moved to dismiss the Complaint.

## II.   LEGAL STANDARD

In a civil forfeiture proceeding, the "sufficiency of the complaint is governed by Supplemental Rule G(2) not by the Civil Rule 12(b) plausibility standard set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)." *United States v. $263,327.95*, 936 F. Supp. 2d 468, 471 (D.N.J. 2013) (internal quotations and citations omitted). Supplemental Rule G(2)(f) provides that a complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. G(2)(f). Also, Supplemental Rule E(2)(a) provides that "the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Supp. E(2)(a)

## III.   DISCUSSION

The Government has sufficiently pled that the Property (the $776,670.00 contained in the Account) was forfeitable under 31 U.S.C. § 5317(c) because it was structured, in violation of 31 U.S.C. § 5324.

Title 31, Section 5317(c) of the United States Code provides that "any property involved in a violation of [31 U.S.C.] section 5324 . . . and any property traceable to any

4

such violation . . ." is forfeitable to the United States.  Accordingly, to establish that the Property seized in this case was forfeitable, the Government must establish a violation of 31 U.S.C. § 5324 ("Section 5324"), which prohibits a practice known as "structuring."  An individual structures a transaction when he or she "breaks up a single transaction above the reporting threshold into two or more separate transactions [ ] for the purpose of evading a financial institution's reporting requirement."  *Ratzlaf v. United States*, 510 U.S. 135, 136 (1994).  To prove a violation of Section 5324, the Government must establish that "(1) the person knowingly structured, attempted to structure, or assisted in structuring a currency transaction; (2) the person knew of the domestic financial institution's legal obligation to report transactions in excess of $10,000; and (3) the purpose of the structured transaction was to evade the reporting obligation."  *United States v. $255,427.15 in U.S. Currency*, 841 F. Supp. 2d 1350, 1356 (S.D. Ga. 2012).  As such, "the only *mens rea* required to violate § 5324 is to have the purpose of evading the reporting requirement—not knowledge that structuring itself is illegal."  *Id.*

Here, the Complaint's allegations set forth a pattern of activity highly suggestive of structuring.  Specifically, the Complaint alleges that over the course of a year, Shin's received a number of cash deposits at bank branches located across the country, even though Shin's did not maintain a business or keep an agent outside of the Los Angeles area.  The Complaint also alleges that depositors frequently made multiple deposits to the Account in a single city on a single day or on consecutive days, and that with just one exception, these deposits were individually less than $10,000.00, but combined the deposits aggregated to more than $10,000.00.  Furthermore, the Complaint alleges that Shin's Account was identified in the ledger of a convicted money launderer.  If true, these allegations give rise to the "reasonable belief" that the deposits in the Account were knowingly structured to evade the requirement to report transactions exceeding $10,000.00.  *See $263,327.95*, 936 F. Supp. 2d at 474 (denying motion to dismiss forfeiture claim based on structuring where deposits, each less than $10,000 but totaling roughly $650,000, were often made on the same day at the same bank).  Furthermore, the facts provide sufficient notice for the Claimants to frame a responsive pleading.  *See* Fed. R. Civ. P. Supp. E(2)(a).

Claimants respond with two arguments, neither of which succeeds.  First, Claimants argue that the Complaint lacks sufficient information to tie Claimants to the alleged structuring.  Claimants note that the Complaint suggests that other individuals— not Claimants—made the deposits at issue.  Claimants also point to their statement to the DEA that they were unfamiliar with applicable reporting requirements.  But regardless of whether the deposits were structured by claimants, the Complaint gives rise to the reasonable belief that the deposits were structured—if not by claimants, then by the

depositors.  That is sufficient to allow this case to proceed to discovery.  *See United States v. Sandini*, 816 F.2d 869, 872 (3d Cir. 1987) ("The innocence of the owner [in a civil forfeiture proceeding] is irrelevant—it is enough that the property was involved in a violation to which forfeiture attaches.").  Ultimately, if they did not violate Section 5324, Claimants will be able to appeal to the "innocent owner" affirmative defense provided by 18 U.S.C. § 983(c).

Second, Claimants argue that the Government will not be able to prove that the Property was structured in violation of Section 5324 because the Claimants do not know, and likely cannot discover, the identity of the depositors, who allegedly participated in the BMPE.  This argument implicates fact issues, and it is premature at this stage of the litigation. (Notably, even if the Government does not currently know the identities of the depositors now, it might be able to discover the identities through discovery.  *See* 18 U.S.C. § 983(a)(c)(2) (permitting Government to use evidence collected during discovery to meet its burden of proof).)  In sum, the Court finds that the Government has met its burden at this stage of the proceeding to allege that the Property was structured, and therefore forfeitable.  Accordingly, the Court will **DENY** the motion to dismiss.

Before concluding, the Court notes that besides from their challenge to the structuring allegations, Claimants also challenge the two additional bases the Government offers for the forfeiture: that the property was (a) laundered money or property derived from an unlawful activity, in violation of 18 U.S.C. §§ 1956 and or 1957 (transacting in property derived from specified unlawful activity), and/or (b) property traceable to the sale of a controlled substance, in violation of 21 U.S.C. § 881.  While the the allegations linking the Property to the BPME are fairly speculative, the Court must consider them along with the additional allegations in the Complaint.  Given the structuring allegations (which survive a motion to dismiss), and given the alleged connection between the Account and a convicted money launderer, the Court finds it proper to allow discovery on whether the Property was connected with money laundering and/or drug sales.

## IV.    CONCLUSION

For the reasons set forth above, the motion to dismiss is **DENIED**.  An appropriate order follows.

               /s/ William J. Martini  
              **WILLIAM J. MARTINI, U.S.D.J.**

**Date: April 28, 2014**